

FILED

DEC 1 4 2016

Clerk, U.S District Court
District Of Montana
Missoula

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BUTTE DIVISION

| | |
|---|---|
| SCOTT JOHNSON,<br><br>    Plaintiff,<br><br> vs.<br><br>FEDERATED RURAL ELECTRIC<br>INSURANCE EXCHANGE,<br><br>    Defendant. | CV 13–18–BU–DLC<br><br><br>ORDER |

Before the Court is Defendant Federated Rural Electric Insurance

Exchange's ("Federated") motion for partial summary judgment. For the reasons

explained below, the Court grants the motion in part as it relates to the claim of

conversion for $14,264.17.

## BACKGROUND

Plaintiff Scott Johnson ("Johnson") was a director of Global Net, Inc.

("GNI") and his removal as an officer is central to litigation involving both GNI

and Glacier Electric Cooperative, Inc. ("GEC") filed in the Eighteenth Judicial

District, Gallatin County, Montana. This litigation is referred to by the parties as

the "underlying litigation," the "underlying action," the "business litigation," and

the "corporate litigation." It will be referred to as the "underlying litigation" in

this Order. The underlying litigation is a separate case from what is referred to by the parties as the "lease litigation." The lease litigation involves a dispute regarding Johnson's property company and the leasing of office space. The lease litigation is irrelevant to the instant motion before this Court.

This action seeks a declaratory judgment regarding Federated's defense and indemnity obligations. Federated provided a Directors, Officers, and Managers Liability and Corporate Indemnification Policy ("D&O Policy") to Johnson's employer. When Johnson was sued in the underlying litigation, Federated issued an initial reservation of rights letter, on May 4, 2012, in which it agreed to provide "a defense" subject to the terms of the letter and the D&O Policy. To date, Federated has paid approximately $2 million in attorneys' fees on behalf of Johnson.

In September 2012, Johnson filed a declaratory judgment action against Federated in the Montana Eighteenth Judicial District Court alleging Federated had failed to pay the full amount of fees and costs incurred by Johnson in the underlying litigation. The suit was removed to this Court on March 18, 2013. Various motions were filed in this action which were subsequently resolved by the parties' stipulation and adopted by the Court on December 17, 2013. (Doc. 43.) The stipulation and Order provided that Federated would pay on a monthly basis all reasonable and necessary attorneys' fees and costs incurred in the defense of

Johnson for the underlying litigation with GEC/GNI. Subsequently, on February 3, 2014, Johnson moved to compel Federated to pay additional attorneys' fees above and beyond the amount stipulated to. The Court denied Johnson's motion. (Doc. 50.)

The case at hand was then stayed due to the potential for settlement of the underlying litigation. Settlement did not occur and Judge Salvagni of the Eighteenth Judicial District Court referred certain motions in the case to Special Master Tracy Axelberg ("Axelberg"). On December 31, 2015, Axelberg issued his Special Master's Report to the Eighteenth Judicial District Court regarding the pending motions. That Report granted GEC/GNI's motion for partial summary judgment as to Johnson's conversion of the sum of $14,264.17, plus interest. Judge Salvagni adopted Axelberg's Report in full.

With the issuance of the Eighteenth Judicial District Court's order regarding Johnson's conversion, Federated issued to Johnson an amended reservation of rights letter, dated March 31, 2016. This letter cites to the following exclusion found in the D&O Policy[1], referred to as the "personal profit exclusion":

> The Company shall not be liable to make any payment of **Loss** in connection with any claims or claims made against the **Insureds**:
>
>> A. Which results in a finding of personal profit, gain or advantage;

---

[1] The initial reservation of rights letter, dated May 4, 2012, also cited to this exclusion.

3

B. For the return by the **Insureds** of any remuneration paid to Insureds without the previous approval of the stockholders of the **Entity**, when payment without such previous approval shall be held by the courts to have been illegal. . . .

(D&O Policy, at 2.) Federated's final determination in its amended reservation of rights letter was that due to Johnson's conversion of GNI funds, the exclusion applies and coverage is precluded under the D&O Policy.

Federated now moves for partial summary judgment seeking a declaratory ruling that the D&O Policy issued by Federated does not provide a duty to defend Johnson in the underlying action, pay interim billing of his attorney's fees and defense costs, or indemnify Johnson against the allegations in the underlying litigation. Johnson opposes the motion and argues that Federated has failed to establish that the Eighteenth Judicial District Court's order, which held Johnson liable for conversion of $14,264.17, unequivocally establishes that no coverage exists under the D&O Policy.

### LEGAL STANDARD

A party is entitled to summary judgment if it can demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is warranted where the documentary evidence produced by the parties permits only one conclusion. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251 (1986). Only disputes over

4

facts that might affect the outcome of the lawsuit will preclude entry of summary judgment; factual disputes that are irrelevant or unnecessary to the outcome are not considered. *Id.* at 248. In ruling on a motion for summary judgment, a court must view the evidence "in the light most favorable to the opposing party." *Tolan v. Cotton*, 134 S. Ct. 1861, 1866 (2014) (quoting *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). "[T]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 1863 (quoting *Anderson*, 477 U.S. at 255).

ANALYSIS

A federal court sitting in diversity jurisdiction applies the substantive law of the forum state to state law claims. *Mason & Dixon Intermodal, Inc. v. Lapmaster Intern. LLC*, 632 F.3d 1056, 1060 (9th Cir. 2011). Thus, the Court analyzes Federated's motion for partial summary judgment pursuant to Montana law.

"The interpretation of an insurance policy presents a question of law" to be decided by the Court. *Allstate Ins. Co. v. Wagner-Ellsworth*, 188 P.3d 1042, 1044 (Mont. 2008). The Court must "examine insurance contracts as a whole, with no special deference to specific clauses, . . . accord the usual meaning to the terms and the words in an insurance contract, and . . . construe them using common sense." *Modroo v. Nationwide Mut. Fire Ins. Co.*, 191 P.3d 389, 395 (Mont. 2008) (citations omitted). "[W]hen the language of a policy is clear and explicit,

the policy should be enforced as written." *Steadele v. Colony Ins. Co.*, 260 P.3d 145, 149 (Mont. 2011) (citations omitted). "Courts should not . . . seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." *Travelers Cas. & Sur. Co. v. Ribi Immunochem Research, Inc.*, 108 P.3d 469, 474 (Mont. 2005) (citations and internal quotation marks omitted).

## I.    Duty to Defend

Federated contends that there is no duty to defend under the D&O Policy because the policy does not contain a defense benefit provision. Federated cites to *Farmers Union Mutual Insurance Company v. Staples*, for the proposition that a duty to defend is determined by the language of the policy and the allegations contained within the four-corners of the complaint. (Doc. 65 at 2; 90 P.3d at 385.) Federated then points to section four of the policy which states:

### Section 4. Defense Costs, Charges and Expenses

A.    The Company does not under the terms of this policy, assume any duty to defend. Any and all costs, charges and expenses of defense payable by the Company are a part of, and not in addition to, the Limit of Liability. **Loss** includes costs, charges and expenses of defense and as such is subject to the provisions of Section 3.

Federated contends that this provision relieves the company of any duty to defend, and cites to a New York case ruling that an insurer does not have a duty to defend

6

under a D&O policy when the policy does not contain a duty to defend provision. *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Ambassador Grp., Inc.*, 556 N.Y.S.2d 549, 553 (1990). Therefore, Federated argues that to the extent coverage exists under the policy, it is limited only to indemnification of defense costs, which Federated contends would not be owing until the end of the litigation.[2]

Johnson counters that under Montana law an insurer has a duty to defend and that duty is independent of and broader than the duty to indemnify. *United Nat. Ins. Co. v. St. Paul Fire & Marine Ins. Co.*, 214 P.3d 1260, 1269 (Mont. 2009); *Insured Titles, Inc. v. McDonald*, 911 P.2d 209, 212 (Mont. 1996). Johnson argues that the language of the D&O Policy is ambiguous as to the duty to defend because the term "Loss" is defined under the policy to include "defense costs" and "charges and expenses . . . incurred in the defense of actions." (Doc. 62-1 at 5.)

Federated's argument relies upon *National Union Fire Insurance Company of Pittsburg v. Ambassador Group, Incorporated*, which explains that "most directors and officers liability policies, [do] not impose an obligation to provide a defense, but only to reimburse expenses incurred in the defense." 556 N.Y.S.2d at 553. The court found that under certain directors and officers liability policies

---

[2] Federated has voluntarily been advancing defense costs. The Court agrees that Federated has not waived its right to assert the arguments made in the subject motion by these voluntary payments.

7

"insurers are required to make contemporaneous interim advances of defense expenses where coverage is disputed, subject to recoupment in the event it is ultimately determined no coverage was afforded." *Id.*

Because *National Union Fire* is an out-of-jurisdiction case, it is not entirely persuasive. However, the Montana Supreme Court has not addressed whether a D&O policy can restrict the duty to defend, and whether there is a difference between the duty to defend and duty to indemnify defense costs under a D&O policy. At the hearing on this motion, Federated's counsel represented to the Court that the case law in Montana relates to "duty to defend" cases interpreting property and casualty policies, which do not apply here because this case involves a D&O policy which expressly excludes a duty to defend and, therefore, the Court should interpret the policy under general contract principles and enforce the policy as written. The Court agrees. However, because the Montana Supreme Court has not addressed this issue, the Court will look to the Ninth Circuit for guidance.

In *Gon v. First State Insurance Company*, the Ninth Circuit interpreted a D&O policy where the insurer contended it did not have a duty to defend, and found that there was no duty to defend under the policy because "[a] policy with a duty to defend typically contains a clause that provides that the insurer chooses the attorney and controls the strategy of the litigation." 871 F.2d 863, 868 (9th Cir. 1989). The policy at issue in *Gon* did not contain language stating that there was a

8

duty to defend, so the Ninth Circuit determined that the policy only covered legal

expenses. *Id.* Nonetheless, the Ninth Circuit ultimately held that "the absence of a

duty to defend, however, is crucial neither to the district court's decision nor to

[the Ninth Circuit's]" because the "obligation actually enforced by the district

court's decision was a duty, under the policy, to pay defense expenses as

incurred." *Id.*

Here, there is no "defense benefit provision" within the D&O Policy and

Section 4 of the D&O Policy does specifically attempt to restrict Federated's duty

to defend.  The D&O Policy provides, in pertinent part, the following:

## INSURING AGREEMENTS

In consideration of the payment of the premium, and in reliance upon
the statements made to the Insurer by application, a copy of which is
attached hereto and forms a part of the policy, and subject to the
Declarations, Insuring Agreements, Terms, Conditions, Limitations
and Amendments or Endorsements as hereinafter provided,
**Federated Rural Electric Insurance Exchange** (hereinafter called
the Company) agrees as follows:

### Coverages A and B

A. The Company will pay on behalf of the **Insureds** all **Loss** which
the **Insureds** shall be legally obligated to pay for any claim or claims
first made against them because of a **Wrongful Act**, provided that the
claim is a result of events or circumstances during the **Policy Period**
and the claim or claims are first made during the **Policy Period** and
written notice of said claim is received by the Company during the
**Policy Period**.

B. The Company will reimburse the **Entity** for all **Loss** for which the

**Entity** shall be required by law to indemnify individual **Insureds** for any civil claim or claims first made against them and arising out of events or circumstances during the **Policy Period** because of a **Wrongful Act**, provided that the claim is first made during the **Policy Period** and written notice of said claim is received by the Company during the **Policy Period**.

In the event that **Insureds** renew this policy of insurance, any claims arising out of events or occurrences during prior consecutive **Policy Periods** insured by the Company will be considered claims arising during the **Policy Period**.

TERMS, CONDITIONS, AND LIMITATIONS

**Section 1. Definitions**

. . .

D.  The term **Wrongful Act** shall mean any actual or alleged error, mis-statement, misleading statement, omission, neglect or breach of duty by one or more of the **Insureds** while acting in their individual or collective capacities as authorized representatives of the **Entity**, subject to the Terms, Conditions and Limitations of this policy.

E.  The term **Loss** means damages, judgments (including pre- and post-judgment interest) settlements, defense costs, charges and expenses (excluding salaries of officers or employees of the corporation) incurred in the defense of actions, suits or proceedings and appeals therefrom for **Wrongful Acts**, subject to the applicable limit, Insuring Agreements, Terms, Conditions and Limitations of the policy; provided always the **Loss** shall not include fines or penalties imposed by law, punitive, exemplary or treble damages, costs, charges and expenses of grand jury or criminal proceedings, or matters which may be deemed uninsurable under law.

. . .

**Section 4. Defense Costs, Charges and Expenses**
(included in the Limit of Liability)

10

A. The Company does not, under the terms of this policy, assume any duty to defend. Any and all costs, charges and expenses of defense payable by the Company are a part of, and not in addition to, the Limit of Liability. Loss includes costs, charges and expenses of defense and as such is subject to the provisions of Section 3.

(D&O Policy at 1–3.) Similar to the Ninth Circuit's holding in *Gon* that the absence of a duty to defend was not crucial to the district court's determination, here too it has no bearing on this Court's determination that there is a duty to advance defense costs. Under a plain meaning interpretation of the definition of "Loss," the policy makes clear that the insurer will pay for all defense costs due to a "Wrongful Act." There is no dispute among the parties that some of the claims yet to be decided in the underlying litigation are covered "Wrongful Acts" under the policy. Thus, an ordinary insured would look to the definition of "Loss" to determine what "Losses" Federated would be obligated to pay. The policy clearly states that the definition of "Loss" specifically includes "defense costs, charges and expenses incurred in the defense of actions, suits or proceedings." (D&O Policy at 2.) Therefore, the Court finds that Federated's D&O Policy does impose a duty to advance defense costs of claims covered under the Policy.

The next issue relates to the timing of the duty to advance defense costs. Federated argues that it does not have duty to pay defense costs until the conclusion of the underlying litigation. Federated's counsel asserted at the hearing that Federated's decision to voluntarily pay interim defense costs was

11

merely a gratuitous act and that it did not waive Federated's ability to make the argument that its obligation to pay defense costs does not arise until the conclusion of the case. As previously indicated in footnote 2, Federated did not waive this argument. However, the Court also agrees with the Ninth Circuit in *Gon* that an "insurer [is] required to pay legal expenses as they [are] incurred by the directors, because that is when the directors were legally obligated to pay." *Gon*, 871 F.2d at 868. Here, the D&O Policy clearly states that it will pay for all Loss that the insureds are "legally obligated to pay," and that Loss includes "defense costs, charges and expenses incurred in the defense of actions, suits or proceedings and appeals therefrom for Wrongful Acts." (D&O Policy at 1–2.) This language supports the same conclusion in *Gon* that Federated is obligated to pay defense costs at the time they are incurred because that is when Johnson is legally obligated to pay them. Consequently, Federated must pay legal expenses for Johnson as they are incurred, including any legal expenses during a potential appeal, for all claims covered under the D&O Policy.

## II.     The Personal Profit Exclusion

Federated argues that when the Eighteenth Judicial District Court adopted Axelberg's Report granting partial summary judgment on the issue of Johnson's conversion of $14,264.17 of GNI funds, that the D&O Policy's personal profit exclusion was triggered. First, Federated contends that the rationale behind the

personal profit exclusion in a D&O Policy is to disallow directors and officers from claiming an insurable loss under the policy when they wrongfully obtain money to which they were not legally entitled. (Doc. 57 at 11–12.) Thus, a "Loss" under the D&O Policy does not include an ill-gotten gain. Federated then bolsters this argument by citing to Montana's public policy that forbids indemnifying willful wrongdoing. *Smith v. State Farm Ins. Companies*, 870 P.2d 74, 76 (Mont. 1994).

Federated cites to multiple out-of-jurisdiction cases to support its argument that the personal profit exclusion should preclude coverage. *See Twin City Fire Ins. Co. V. CR Technologies*, 90 F. Supp. 3d 1320, 1323–26 (S.D. Fla. 2015); *Westport Ins. Corp. v. Hanft & Knight, P.C.*, 523 F. Supp. 2d 444, 454 (M.D. Pa. 2007); *TIG Specialty Ins. Co., v. Pinkmonkey.com, Inc.*, 375 F.3d 365, 371–72 (5 Cir. 2004); *Bistricer v. Fed. Ins. Co.*, 2003 WL 22251290, 3 (S.D.N.Y. 2003); *Jarvis Christian College v. Nat. Union Fire Ins. Co. of Pittsburgh, PA*, 197 F.3d 742 (5th Cir. 1999). Johnson takes issue with these supporting cases because they involve "a determination of an undisputed allegation that the insured committed an intentional or deliberate fraudulent act." (Doc. 61 at 19.)

Summarizing Johnson's argument, he essentially urges the Court to determine that the finding of conversion in the underlying case is not comparable to an intentional, wrongful act. Johnson explains that elements of conversion

13

under Montana law do not have the specific language of "personal profit, gain or advantage." *Feller v. First Interstate Bancsystem, Inc.*, 299 P.3d 338, 343 (Mont. 2013) ("A plaintiff alleging a claim of conversion must establish the following four elements: (1) property ownership by the plaintiff; (2) plaintiff's right of possession of the property; (3) defendant's unauthorized control over the property; and (4) damages."). Johnson argues that since the language in Axelberg's Report did not specifically match the language of the policy exclusion or the elements of conversion under Montana law, the exclusion does not apply.

The Court looks to the following analysis by Axelberg for clarification:

> The Special Master notes that this figure [of $14,264.17] is composed of expenditures of a nature not normally associated with legitimate business expenses: personal attorney fees, personal home repairs, concert t-shirts, fender flairs for a Hummer, dental bills, movie tickets, vacation expenses and payment of Johnson's daughter's speeding ticket.

> . . .

> Here, Johnson has not correctly accounted for the sum of $14,264.17 rightly belonging to GNI. Johnson's control over those funds was not authorized by GNI and, according to Mr. Penor [Plaintiffs' accounting expert], "should not have been paid by Global Net." Section 27-1-320, MCA, provides that the damages for a conversion claim include "the value of the property at the time of conversion with interest from that time. . . ." Plaintiffs' motion for partial summary judgment for Johnson's conversion of the sum of $14,264.17, plus interest, is granted.

(Doc. 58-3 at 9–10.) Judge Salvagni adopted Axelberg's findings in full, granted

partial summary judgment on the claim against Johnson for conversion, and declined to elaborate on the issue. The language Axelberg uses is clear and unequivocal that Johnson did indeed convert a certain amount of GNI funds for personal gain. In fact, those specific funds were tied directly to his personal dental bills, movie tickets, vacation expenses, and his daughter's speeding ticket. To conclude that Johnson did not convert these funds for his personal profit, gain, or advantage would be nonsensical.

Additionally, under the Restatement Second of Torts , "conduct . . . is a conversion only if it amounts to an intentional exercise of dominion or control over the chattel, and so seriously interferes with another's right of control as to make it just to require the actor to pay the full value of the chattel." Restatement (Second) of Torts § 223 (1965). Here, there is no doubt that Johnson committed conversion by taking control of GNI funds and intentionally using those funds for his personal gain.

Finally, looking to the supporting case law, the Court finds that Federated's citations to *Jarvis v. National Union Fire Insurance Company*, and *TIG Specialty Insurance Company v. Pinkmonkey.com, Incorporated*, are most similar to the facts at hand. In *Jarvis*, a community college brought suit seeking to recover indemnity pursuant to a School Leaders Errors and Omissions Policy for loss caused by a board member investing $2 million of the college's funds into a

business he had forty-nine percent ownership interest in. 197 F.3d at 744–745. The Fifth Circuit concluded that this transfer constituted an "advantage in fact" sufficient to trigger an identical exclusion because an advantage "encompasses any gain or benefit, such as an opportunity to make a profit." *Id.* at 748, 749. The court reasoned that the cash infusion created an opportunity for the business to "grow and prosper, and also to gain credibility with other companies," and that the insured "would become the owner of a successful business," thus creating a "personal advantage." *Id.* at 747. Even though the insured's company operated at a net loss, the $2 million "created a viable opportunity for his business, and therefore himself as well, to make a profit." *Id.* at 748.

Similarly in *TIG Specialty*, the insured had been convicted of stock fraud. The conviction meant that the jury found that the insured "benefitted from the false representation or promise." *Id.* at 370. Citing *Jarvis*, the court concluded that, as a result of the stock fraud, the insured "gained a personal advantage from the opportunity to own and participate in a successful business." *Id.*

As in *Jarvis* and *TIG Specialty*, where the insureds gained a personal advantage from using company funds and transferring those funds into their own businesses, here Johnson unequivocally gained a personal advantage when he used $14,264.17 for his personal expenses. Therefore, Axelberg's findings do support the conclusion that the conversion Johnson committed was for the purpose of his

personal profit, gain and advantage and, consequently, that the exclusion applies in this case and coverage is precluded as it relates to the claim of conversion for $14,264.17.

The Court must now determine if the applicability of the personal profit, gain and advantage exclusion precludes coverage under the D&O Policy for all claims. The Court understands that there are motions still pending in the underlying litigation. (*See* Doc. 67 at 14, Plaintiff's Demonstrative Exhibits.) Johnson's concern is that Federated did not consider the additional claims and defenses that have yet to be ruled on in the underlying litigation before making its coverage determination. Johnson argues that until all of the claims against Johnson in the underlying litigation are determined by a jury, Federated must continue to indemnify Johnson under the D&O Policy for each separate claim. Johnson's counsel argued at the hearing that the "any claim" language in Section 2 would support a conclusion for segregation of indemnifying individual claims. Simply put, Johnson believes that the majority of the alleged conduct at issue in the underlying litigation qualify as "Wrongful Acts" under the D&O Policy and that Federated cannot relieve itself entirely from its duty to indemnify based solely on the personal profit exclusion and, thus, Federated continues to have a duty to advance defense costs.

Alternatively, Federated argues that "it will not pay any Loss arising out of

the claims commenced by Plaintiffs and Johnson against each other in the underlying action." (Doc. 57 at 5.) Federated reiterates this argument in its reply brief, stating that "[t]he intentional act of conversion is dispositive as to coverage related to all claims in the underlying action." (Doc. 65 at 9, 16.) However, Federated cites no authority to support this proposition. Federated's citations only relate to the applicability of the personal profits exclusion, not to whether that exclusion bars coverage as to all claims. Nonetheless, Federated continued to assert this position at the hearing and contended that under a plain and ordinary meaning analysis that the exclusion reads if "any claim" is barred from coverage, that coverage is therefore completely precluded for all claims. Federated explained that the only caveat that would reinstate their duty to advance defense costs in the underlying litigation would be if an appellate court reversed Judge Salvagni's finding of conversion.

The following cases are particularly helpful on this issue. In *Westport Insurance Corporation v. Black, Davis & Shue Agency, Incorporation*, a Pennsylvania United States District Court found that "the personal profit exclusion applies only to claims that an insured gained a personal profit," but that the insurer did not meet its burden to prove the applicability of the personal profit exclusion to the underlying action. 513 F. Supp.2d 157, 168 (M.D. Pa. 2007). In *Brown & LaCounte, L.L.P. v. Westport Insurance Corporation*, the Seventh Circuit found

that under a professional liability insurance policy "the personal profit exclusion is one of several exclusions in the policy designed to categorically exclude ***certain kinds of claims*** from coverage." 307 F.3d 660, 663 (7th Cir. 2002) (emphasis added). Finally, in *Alstrin v. St. Paul Mercury Insurance Company*, a federal Delaware district court described that:

> [a]lmost all securities fraud complaints will allege that the defendants did what they did in order to benefit themselves in some way. If such an allegation were sufficient to invoke the protections of 4(a), the broad coverage for "Securities Claims" provided by the National Union policy would be rendered valueless by this exclusion. ***The proper inquiry, therefore, must focus not only on the factual allegations, but on the elements of the causes of action that are alleged***. If an element of the cause of action that must be proved requires that the insured gained a profit or advantage to which he was not legally entitled, then, if proved, this exclusion would be applicable.

179 F. Supp. 2d 376, 400 (D. Del. 2002) (emphasis added.) All of these cases explain that even if a certain claim falls under a personal profit exclusion, only claims that relate to that claim are precluded and other claims would continue to be covered under the insurance policy.

Montana law has not ruled on this specific issue. However, the Montana Supreme Court did interpret a financial gain exclusion under a city's self-insurance plan in *City of Dillon v. Montana Municipal Insurance Authority*, 220 P.3d 623 (Mont. 2009). In *City of Dillon*, following a judgment for a police officer's widow's action against the City of Dillon for unpaid pension benefits, the

City of Dillon tendered defense of the claim to the government self-insurance plan, the Montana Municipal Insurance Authority (MMIA). *Id.* at 624. MMIA declined to provide coverage and did not tender a defense because of the policy's "financial gain" exclusion. *Id.* This exclusion precluded coverage if the insured obtained "remuneration or financial gain to which the covered party was not legally entitled." *Id.* Since the City of Dillon kept the widow's pension benefits, the insurer denied coverage because the "City had converted to its own use her money and the use of that money over time." *Id.*

The financial gain exclusion provided that there was no coverage for "*any* liability" of the City of Dillon that arises "in whole or in part" from the City of Dillon obtaining money that it was not entitled to. *Id.* at 624–625. Analyzing the exclusion under a plain language interpretation, the Montana Supreme Court found that the widow's two claims—one for the pension's principal, and the second for the pension's interest—were "inextricably related and both ar[o]se from and constitute[d] conversion." *Id.* Therefore, because the City of Dillon converted the widow's pension benefits, that conversion constituted a financial gain to which the City of Dillon was not legally entitled, and the widow's claims precluded the insurer from indemnifying and defending the City of Dillon in the underlying action. *Id.* at 625–626.

Based on the Montana Supreme Court's plain language interpretation of a

financial gain exclusion under a similar insurance policy, this Court will first look to the language of the D&O Policy at issue. Next, due to the holding in *City of Dillon*, the Court will then determine if each claim made by GEC/GNI in the underlying litigation is inextricably related to the personal advantage gained by Johnson.

The Insuring Agreement expressly provides that coverage is "subject to the Declaration, Insuring Agreements, Terms, Conditions, Limitations and Amendments or Endorsements" within the policy. Section 2 limits coverage as follows:

### Section 2. Exclusions

The Company shall not be liable to make any payment of **Loss** in connection with any claim or claims made against the **Insureds**:

A. Which result in a finding of personal profit, gain or advantage;

. . . .

(D&O Policy at 2.) The specific language "*in connection with* any claim or claims" in its ordinary sense means that if any claim is "in connection" with an exclusion, coverage is precluded under the policy as to that claim. Similar to the policy language in *City of Dillon* which stated that a claim that arises "in whole or in part" from an exclusion is not a covered claim under the policy, here the "in connection with" language also explains to an insured that if any claim is related

21

to one of the enumerated exclusions, coverage would be precluded. The Court also agrees with the argument of Johnson's counsel at the hearing that the D&O Policy included the term "any" in front of the words "payment" and "claim" for a reason, and that the word "any" signifies segregation of individual claims to an ordinary reader. Thus, because the underwriter used the term "any payment" that is "in connection with" "any claim," this language distinguishes claims from one another.

Now, while the claim of conversion for $14,264.17 against Johnson falls under the personal profit exclusion, the Court must also determine if the other remaining claims are inextricably related to that specific claim of conversion. A "Wrongful Act" under the policy is defined as:

> [A]ny actual or alleged error, mis-statement, misleading statement, omission, neglect or breach of duty by one or more of the Insureds while acting in their individual or collective capacities as authorized representatives of the Entity, subject to the Terms, Conditions and Limitations of this policy.

(D&O Policy at 1.) The Court agrees with Johnson that multiple claims made by GEC/GNI in the underlying litigation are covered claims under the D&O Policy because they qualify as "Wrongful Acts" and are not subject to an exclusion. The original complaint filed by GEC/GNI alleges the following claims against Johnson: Count I: Conversion; Count II: Accounting; Count III: Unjust Enrichment; Count IV: Constructive Fraud; Count V: Breach of Statutory and

Fiduciary Duties and Breach of Duty of Loyalty; Count VI: Removal of Johnson as Director of Global Net; Count VII: Dissolution; Count VIII: Injunctive Relief; and Count IX: Punitive Damages. (Doc. 62-2.)

Johnson's counsel listed the following claims that are ongoing in the underlying litigation: conversion (a claim for conversion of a separate and large sum of money remains); accounting; unjust enrichment; constructive fraud; breach of statutory and fiduciary duties; breach of duty of loyalty; aiding and abetting breach of fiduciary and other duties; conspiracy; abuse of process; tortious interference with business relations; reimbursement; indemnification; and punitive damages. (Doc. 67 at 14.) No party has put forth evidence to suggest that any of these remaining claims is inextricably related to Johnson's conversion of the sum of $14, 264.17. Therefore, the Court does not find that these remaining claims are "in connection with" or "inextricably related to" Johnson's claim of conversion and, consequently, these claims remain covered claims under the D&O Policy.

Based on the foregoing, the Court concludes that the finding by Axelberg that a conversion occurred triggers direct application of the personal profits exclusion and, therefore, Federated's motion for partial summary judgment as to the claim for conversion for $14,264.17 is granted. However, the exclusion does not preclude all coverage under the policy, because the underlying litigation is still ongoing and multiple claims that are covered "Wrongful Acts" under the D&O

Policy have yet to be determined by the Eighteenth Judicial District Court.
Therefore, Federated has no further duty to advance defense costs to Johnson in
regards to the conversion claim for $14,264.17 in the underlying litigation, but
Federated does have the duty to advance defense costs as they are incurred for the
remaining claims, and until those claims are determined to be in fact excluded
from coverage.[3]

## III.  Apportionment

The issue of recoupment brought by Johnson in his response brief relates to
whether Federated is entitled to apportion defense costs between covered and
uncovered claims under the D&O Policy. (Doc. 61 at 13.) Thus, the question to
be resolved is whether the finding of conversion of $14,264.17, which the Court
has already determined precludes coverage only as to that claim for conversion,
would mean that Johnson's conduct related to this conversion of GNI funds was
never actually covered under the policy and thus he was not entitled to the defense
costs advanced to him to defend that claim.

Montana follows the "mixed-action" rule. *State Farm Fire & Cas. Co. v.
Schwan*, 308 P.3d 48, 51 (Mont. 2013). The mixed-action rule "requires an

---

[3] The Court is aware that another larger claim for conversion is still outstanding in the underlying litigation and, thus, Federated remains obligated to advance defense costs in regards to this claim. To the best of the Court's knowledge, and without argument from the parties, this larger conversion claim is separate from the conversion of $14,264.17 that Judge Salvagni ruled on.

insurer to defend all counts in a complaint so long as one count potentially triggers coverage, even if the remaining counts would not be covered." *Id.* Since insurers generally pay defense costs concurrently with performance of their duty to defend, the insurers are therefore in a position to seek reimbursement of defense costs only at the conclusion of the mixed-action in jurisdictions that allow reimbursement.

Montana law has determined that an insurer may recoup its defense costs for those claims outside the policy if the insurer timely and explicitly reserved its right to recoup defense costs in its initial reservation of rights letter to the insured. *Travelers*, 108 P.3d at 480; *see also Horace Mann Ins. Co. v. Hanke*, 312 P.3d 429, 435 (Mont. 2013). Thus, insurers who reserve this right are required to pay defense costs incurred up through the triggering event that would entirely preclude coverage under the policy.

Federated's first reservation of rights letter, dated May 4, 2012, does not explicitly state that it reserved its right to recoup defense costs. (Doc. 19-4.) Therefore, the Court concludes that Federated is not entitled to seek reimbursement of defense costs related to Johnson's conversion of $14,264.17. Even if the Court was to allow reimbursement, it would be impossible to distinguish between defense costs advanced to defend that claim as opposed to the other claims.

Accordingly, IT IS ORDERED that Defendant Federated's motion for

partial summary judgment (Doc. 56) is GRANTED IN PART. The D&O Policy's personal profit exclusion applies and coverage is precluded only as to the claim of conversion for $14,264.17 against Johnson. Based on the Court's analysis above, Federated is still under a duty to advance defense costs as they are incurred as to the remaining covered claims.

IT IS FURTHER ORDERED that because this Order serves as a judgment as to the entire declaratory action regarding Federated's defense and indemnity obligations, and provides guidance to the parties as they go forward, this case is CLOSED.

The Clerk of Court is instructed to enter judgment in favor of Defendant Federated precluding coverage for the claim of conversion for $14,264.17, and in favor of Plaintiff Johnson regarding coverage for all other claims in the underlying litigation.

DATED this 14th day of December, 2016.

Dana L. Christensen, Chief Judge
United States District Court